IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HILDA L. SOLIS,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br>Plaintiff,<br><br>v.<br><br>CONTINGENT CARE LLC,<br>ENDLESS POSSIBILITIES, L.L.C., and<br>WOLFGANG J. SHIELDS, individually<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) CASE NO. 11CV00871-BCW<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SUGGESTIONS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT, AND STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor, through her attorneys, submits the following Suggestions in Support of her Motion for Partial Summary Judgment, and Statement of Uncontroverted Material Facts.

## I. INTRODUCTION

This is an action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (the "FLSA" or the "Act"). Defendant Endless Possibilities, L.L.C. ("Endless Possibilities"), operates a child care facility at 6800 Bannister Road in Kansas City, Missouri that is open 24 hours, seven days a week. (Complaint, Doc. No. 1, ¶ III; Answer, Doc. No. 6, ¶ 3). Defendant Contingent Care LLC ("Contingent Care"), employs the workers that provide child care services at Endless Possibilities. (Doc. No. 1, ¶ II; Doc. No. 6, ¶ 2 ). Defendant Wolfgang J. Shields controls, operates and manages Contingent Care and Endless Possibilities. (Doc. No. 1, ¶ V; Doc. No. 6, ¶ 5). Plaintiff alleges that Defendants have violated the overtime and recordkeeping provisions of the

FLSA, 29 U.S.C. §§ 215(a)(2) and (a)(5). (Doc. No. 1). Plaintiff seeks to restrain Defendants from the continued withholding of back wages due to Defendants' current and former employees, and to enjoin Defendants from future violations of the Act. (Doc. No. 1). Plaintiff moves for the entry of summary judgment in her favor on the single legal issue of whether Defendant Wolfgang J. Shields is an employer within the meaning of the FLSA.

## II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. Shields controls, operates and manages Contingent Care and Endless Possibilities. (Complaint, Doc. No. 1, ¶ V; Answer, Doc. No. 6, ¶ 5).

2. Shields acts directly or indirectly in the interests of Contingent Care in relation to its employees. (Complaint, Doc. No. 1, ¶ V; Answer, Doc. No. 6, ¶ 5).

3. Shields sets work hours, determines rates of pay, sets policy, determines bonuses and overtime pay, and is involved with employee discipline and termination for Contingent Care's employees. (Complaint, Doc. No. 1, ¶ V; Answer, Doc. No. 6, ¶ 5).

4. Shields has a Master of Science in Accounting and has been licensed as a CPA since 1996. (Exhibit A, Excerpts from the Deposition of Wolfgang J. Shields, pp. 7-8).

5. Endless Possibilities is a Missouri LLC. (Ex. A, p. 11).

6. When Endless Possibilities was formed in 1998, Shields was 75% owner and was the lead organizer of five organizers. (Ex. A, pp. 9-10).

7. Shields is currently 95% owner of Endless Possibilities. (Ex. A, p. 11).

8. Shedrick Sublitt, the current 5% owner of Endless Possibilities, is a silent owner who has no involvement in the business. (Ex. A, pp. 11, 47-48).

9. Endless Possibilities provides child care services. (Ex. A, pp. 19, 24).

10. Endless Possibilities had employees until about 2007 when Contingent Care was formed, and then it ceased having employees. (Ex. A, pp. 19-21).

11. Shields handles management responsibilities, sales, finances, and technology for Endless Possibilities. (Ex. A, p. 42).

12. Shields' sales work for Endless Possibilities includes handling advertising via print, radio, and direct mail, as well as through the Endless Possibilities website. (Ex. A, p. 43).

13. Shields wrote a Parent Handbook containing policies and procedures that was accessible from the Endless Possibilities website. (Ex. A, pp. 150-152).

14. Shields' financial work for Endless Possibilities includes accounting, bookkeeping, and taxes. (Ex. A, pp. 43-44, 83).

15. Shields is the only person who sets policies for Endless Possibilities. (Ex. A, pp. 42-43, 50-51).

16. Endless Possibilities' management consists of Shields and two operations managers. (Ex. A, pp. 44, 46).

17. Shields has had the two operations managers from 2008-2012. (Ex. A, p. 96).

18. Shields sets the policies, and the operations managers help to execute the policies. (Ex. A, p. 51).

19. Endless Possibilities is licensed to serve up to 47 children at one time, however there are two "overlap" hours each day when the facility may exceed that capacity by 1/3. (Ex. A, pp. 65-66).

20. Shields personally decides each day how and where to use the two "overlap" hours after considering factors such as schedules and the number of children present. (Ex. A, pp. 66-67).

21. Shields is usually on site at Endless Possibilities Monday through Friday. (Ex. A, pp. 67-68).

22. Contingent Care is a Missouri LLC, Shields was the sole organizer, and he has always been its 100% owner. (Ex. A, pp. 46-48).

23. Shields decided to form Contingent Care for liability and efficiency purposes. (Ex. A, p. 46).

24. After Contingent Care was formed in the 2007-2008 timeframe, all Endless Possibilities employees were transferred over to become employees of Contingent Care. (Ex. A, pp. 20-21).

25. Contingent Care supplies the employee labor to Endless Possibilities. (Ex. A, pp. 17-18).

26. Shields is solely in charge of Endless Possibilities' payments to Contingent Care for employee labor and supplies. (Ex. A, p. 50).

27. Shields' duties for Contingent Care are management, policy setting, finance, and risk management. (Ex. A, p. 50).

28. Shields does all accounting and tax preparation for Contingent Care. (Ex. A, p. 83).

29. Management for Contingent Care consists of the same people who are management for Endless Possibilities – Shields as the top person in management, and his two operations managers. (Ex. A, pp. 44, 52).

30. Shields supervises the operations managers and will discipline them as necessary. (Ex. A, p. 98).

31. Shields is the only person who formulates policies for Contingent Care, which policies are followed by the operations managers and child care assistants. (Ex. A, pp. 50-51, 92-93).

32. Shields wrote the job description for child care assistant. (Ex. A, pp. 63-64).

33. Shields wrote the job description for operations manager. (Ex. A, pp. 99-100).

34. Shields wrote an employment-type handbook for all employees for which he formulated the policies and procedures within, and which he has continued to edit over time. (Ex. A, pps. 100-103).

35. Shields is the person who decided that all Contingent Care employees should be hourly, not salaried. (Ex. A, p. 70).

36. Shields solely sets the hourly wages for Contingent Care employees, including deciding whether an employee should make more than minimum wage, and whether an employee should receive a pay increase or pay decrease. (Ex. A, pp. 68-69, 105).

37. Somewhere in the 2008-2010 timeframe Shields decreased or set everyone's hourly wage to the federal minimum wage. (Ex. A, p. 127-129).

38. Shields decides whether, in his discretion, Contingent Care employees will receive bonuses. (Ex. A, pp. 69, 105, 110-111).

39. In 2010 Shields formulated rolling annual operational goals that applied to the organization as a whole and which, if met, would have yielded a bonus pool for everyone. (Ex. A, pp. 106-110).

40. Shields decided what the operational goals should be and what level would be sufficient to meet each goal. He evaluated whether the goals were met, which has never occurred. (Ex. A, pp. 108, 110-111).

41. At times Shields decided on a per-employee basis to give some employees "other" pay in their paycheck which was money he paid solely in his discretion and decided at the time he did payroll.[1] (Ex. A, pp. 144, 146-148, 167-169, 206).

42. Shields is the only person involved in formulating policies relating to overtime for Contingent Care employees. (Ex. A, p. 70).

43. Shields calculates all overtime for Contingent Care employees. (Ex. A, pp. 70, 73-74).

44. Shields decides how many hours can be worked by an employee in a given day, week, or month. (Ex. A, p. 84).

45. Shields prepares the Contingent Care payroll. (Ex. A, p. 70).

46. Shields inputs the payroll information into a web-based service. (Ex. A, pp. 71, 114-115).

47. Shields signs the Contingent Care paychecks. (Ex. A, p. 71).

48. Shields determines what days will be included in each pay period. (Ex. A, pp. 71-72).

49. Shields determines the pay date for each pay period. (Ex. A, pp. 75-76).

50. Shields made the decision to have a monthly pay period instead of a weekly or bi-weekly pay period. (Ex. A, pp. 71-73).

51. Although operations managers may identify the need to hire more personnel, Shields must approve the decision to hire additional personnel. (Ex. A, p. 86-87, 91-92).

52. Interviews for child care assistants are mainly conducted by operations managers, though Shields does some child care assistant interviews. (Ex. A, pp. 88-89, 98).

53. Shields interviews operations managers. (Ex. A, p. 97).

[1] The parties disagree as to the nature of what the "other" pay actually was, however, there is no dispute that "other" pay was included on some paychecks, and for purposes of this summary judgment motion only, Plaintiff accepts as true Shields' claim that "other" pay was perceived by him to be either a bonus or extra pay for weekend work.

54. All decisions to terminate an employee are ultimately made by Shields, though the recommendation for that decision and/or the communication of that decision may be made by an operations manager. (Ex. A, pp. 93-94).

55. Shields decides whether or not to offer employee benefits. (Ex. A, p. 99).

56. Although setting weekly schedules is more of an operations manager task, Shields is involved in evaluating whether there is enough staffing. (Ex. A, p. 88).

57. Shields decided to implement a "six by six" schedule to help control payroll costs, whereby employees work six hours a day, six days a week. (Ex. A, pp. 131-133).

58. Shields is in charge of approving time off. (Ex. A, p. 104).

59. Shields makes all financial decisions for Contingent Care and Endless Possibilities. (Ex. A, p. 83).

60. Shields is the only person who can approve expenditures for Endless Possibilities and Contingent Care. (Ex. A, p. 83).

## III. **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the Federal Rules. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (summary judgment was designed "to secure the just, speedy and inexpensive determination of every action").

Not every factual dispute between the parties will prevent summary judgment. A genuine issue of material fact exists only if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chao v. Barbeque Ventures, LLC, 547 F.3d 938, 941 (8th Cir. 2008). If the party seeking summary judgment meets its initial burden, then the burden

shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## IV. ARGUMENT

The FLSA prohibits any "employer" from violating the Act's provisions. 29 U.S.C. §§ 206, 207. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employer" is defined more broadly than in traditional common law applications due to the remedial purposes of the Act. Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991). In determining employer status, "economic reality" prevails over technical common law concepts of agency. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961); Baker v. Stone Cty., 41 F. Supp. 2d 965, 979 (W.D. Mo. 1999).

Liability exists under the FLSA not only against the corporation owing the overtime compensation, but also against individual corporate officers: "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Elliott Travel, 942 F.2d at 965, quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983); Solis v. FirstCall Staffing Solutions, Inc., No. 08-0174-CV-W-ODS; 2009 WL 3855702, at *6 (W.D. Mo. Nov. 18, 2009), citing cases. Thus, several simultaneous employers may be responsible for violations of the Act. Falk v. Brennan, 414 U.S. 190, 195 (1973).

Shields is an "employer" within the meaning of the Act. He was 75% owner of Endless Possibilities, and its lead organizer, when he formed it in 1998, and he later

became its 95% owner. (Statement of Uncontroverted Material Facts ("SOF"), ¶¶ 5, 6, 7). Endless Possibilities' 5% owner has no involvement in the business. (SOF, ¶ 8). In the 2007-2008 timeframe Shields made the business decision to form Contingent Care for liability and efficiency purposes and transfer all Endless Possibilities employees to become employed by Contingent Care. (SOF, ¶¶ 10, 23, 24, 25). Shields organized Contingent Care and has been its 100% owner since its inception. (SOF, ¶ 22).

Among other things, Shields handles management responsibilities, sales, finances, and technology for Endless Possibilities. (SOF, ¶¶ 11, 12, 14, 59). Shields' duties for Contingent Care include management responsibilities, finance, and risk management. (SOF, ¶¶ 27, 28, 59). The management structure for both Endless Possibilities and Contingent Care is identical and at all relevant times[2] has consisted of three people: Shields as the top management person, and two operations managers who are directly supervised by Shields. (SOF, ¶¶ 16, 17, 18, 29).

Shields personally sets all policies for both Endless Possibilities and Contingent Care. (SOF, ¶¶ 15, 18, 31). As part of his policymaking, Shields formulates, writes and distributes policies and procedures, including but not limited to job descriptions, an employee handbook, and a parent handbook for parents of children attending Endless Possibilities. (SOF, ¶¶ 13, 32, 33, 34).

Shields makes all financial decisions for Endless Possibilities and Contingent Care. (SOF, ¶¶ 59, 60). Shields handles all of Endless Possibilities' payments to Contingent Care for employee labor and supplies. (SOF, ¶ 26). He performs all

[2]The current investigation concerns the time period December 13, 2008 forward. (Doc. No. 1, ¶ VIII). Although the outcome of Wage and Hour investigations from earlier time periods will be relevant to the determination of willful and repeated conduct, see Doc. No. 1, ¶ XI, for purposes of liability for FLSA violations in the present action, the relevant time period is December 13, 2008 and following.

accounting, bookkeeping and tax preparation for both entities. (SOF, ¶¶ 11, 14, 27, 28, 59).

Significantly, Shields is the sole decisionmaker with respect to rates of pay, increases or decreases in rates of pay, and bonus pay for employees. (SOF, ¶¶ 36, 37, 38, 39, 40, 41). He is the person that prepares the payroll, including inputting the data and signing the paychecks. (SOF, ¶¶ 45, 46, 47). He decided that all employees should be hourly, not salaried. (SOF, ¶ 35). At some point during the 2008-2010 timeframe, Shields made the unilateral decision to set everyone's hourly wage to federal minimum wage. (SOF, ¶ 37). With respect to bonuses, Shields has formulated operational goals for the organization as a whole and he has evaluated whether the goals were met. (SOF, ¶¶ 38, 39, 40, 41). As the goals were never met, Shields represents that all bonuses awarded were instead given at his discretion. (Id.).

Shields sets all policy related to overtime compensation. (SOF, ¶ 42). He decides how many hours employees can work in a given day, week, or month. (SOF, ¶ 44). He calculates overtime pay for all employees. (SOF, ¶ 43). He exercises discretion whether to pay "other" pay.[3] (SOF, ¶ 41). Shields determines what days will be included in each pay period. (SOF, ¶¶ 48, 50). He also determines the pay date for each pay period. (SOF, ¶ 49).

Shields ultimately approves all hiring decisions and all firing decisions. (SOF, ¶¶ 51, 54). At times he is involved in interviewing applicants for employment. (SOF, ¶¶ 52, 53). Shields decides whether to offer employee benefits, and he is in charge of approving

[3] Plaintiff has alleged that "other" pay was used as a vehicle to exclude regular wages from calculation in overtime; it is alleged that the regular rate was reduced to minimum wage so that overtime would be calculated on the lower minimum wage and then "other" pay was awarded to make up for the difference between the prior regular rate and the lower minimum wage.

all time off. (SOF, ¶¶ 55, 58). Although operations managers set weekly schedules, Shields evaluates staffing, and he has instituted a six-day, six-hour work schedule for employees to help control payroll costs. (SOF, ¶¶ 56, 57). Shields also makes a daily decision how to use two hours of "overlap" time during which Endless Possibilities is allowed to exceed the number of children it is licensed to serve. (SOF, ¶¶ 19, 20). Shields is normally on site at Endless Possibilities Monday through Friday. (SOF, ¶ 21). He directly supervises the operations managers. (SOF, ¶ 30).

To be classified as an employer, the Act does not require that Shields have exclusive control over the corporation's day-to-day functions, but simply that he has operational control over significant aspects. Elliott Travel, 942 F.2d at 966 (chief corporate officer was employer where he had significant ownership interest and control over aspects of day-to-day functions, including determining employee salaries, though he delegated to others the computational work associated with paying employees); see also Wirtz v. Pure Ice Co., 322 F.2d 259, 263 (8th Cir. 1963) (conclusion that an individual is an employer under FLSA would be well supported by a combination of stock ownership, management, direction and the right to hire and fire employees).

Courts have held that individuals are § 203(d) employers on facts showing considerably less involvement than that evidenced by Shields. In Solis v. Hill Country Farms, Inc., the court deemed corporate officer Kenneth Henry a § 203(d) employer under FLSA despite his residing in Texas and delegating day-to-day workplace functions to others on site with the employees in Iowa. 808 F. Supp. 2d 1105, 1116 (S.D. Iowa 2011). Factors germane to his "employer" status included that Mr. Henry was a 50% owner of the company, he had the power to control day-to-day functions, he negotiated

compensation for his employees from a third party, he actively controlled company finances through his accountant, and he made some worker scheduling decisions. Id.

The facts show that Shields is the top management person and sole policymaker for the enterprise[4] formed by Endless Possibilities and Contingent Care. He exclusively handles wage decisions, overtime, payroll, bonuses, and all other finances. He makes material decisions relating to employees, and he has ultimate hiring and firing authority. He is fully involved in every aspect of the operation of the enterprise and in charge of its direction. He is involved in the day-to-day operation of the business, being physically on site Monday through Friday. On these facts, he is a § 203(d) employer, subject to personal liability for any violations of the Act and back wages owing which may ultimately be established. See Chambers Constr. Co. v. Mitchell, 233 F.2d 717, 724 (8th Cir. 1956) (affirming injunction against corporate president/manager where he was "engaged in the active management of the affairs of the corporation, though he was 'shown not to have assumed any special obligation individually to pay the wages or salaries . . .'"); Solis v. Int'l Detective & Prot. Serv., Ltd., 819 F. Supp. 2d 740, 748-49 (N.D. Ill. 2011) (president and sole owner who did payroll, accounting, invoicing, decided pay raises, signed paychecks and controlled all corporate activities was § 203(d) employer).

## V. CONCLUSION

At all relevant times, Shields has been the owner, manager, and decisionmaker with operational control of the enterprise formed by Endless Possibilities and Contingent

[4] Defendants have admitted that Endless Possibilities and Contingent Care constitute an enterprise within the meaning of § 3(r) of the Act. See Complaint, Doc. No. 1, ¶ V; Answer, Doc. No. 6, ¶ 5). Regardless, Shields' management and control of each entity is sufficient to deem him a § 203(d) employer for each entity on its own.

Care. Accordingly, he is a § 203(d) employer within the meaning of the Act and should be held individually and jointly responsible for any violations of the Act, and for back wages that are ultimately found due to employees.

M. Patricia Smith
Solicitor of Labor
Connecticut Bar #371708

Janet M. Graney
Acting Regional Solicitor
Illinois Bar #1033131

s/ Dana M. Shannon
Dana M. Shannon
Kansas Bar #21572
Attorney

Two Pershing Square Building
2300 Main Street, Suite 1020
Kansas City, MO 64108
shannon.dana@dol.gov
(816) 285-7260
(816) 285-7287 (fax)

Attorneys for Plaintiff Hilda L. Solis
Secretary of Labor
U.S. Department of Labor

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2012, I electronically filed the foregoing with the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Robert E. Arnold
ARNOLD LAW FIRM LLC
525 E. Kansas City Road
Olathe, KS 66061
rarnold@arnold-lawfirm.com

s/Dana M. Shannon